UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

STEFFIN T. McFALL,

      Plaintiff,

v.                                                                                      CAUSE NO. 3:20-CV-973-DRL

BASS and BETTY,

      Defendants.

OPINION AND ORDER

Steffin T. McFall, a prisoner without a lawyer, is proceeding in this case "against Nurse Betty [Boggs] and Sergeant Bass in their individual capacities for compensatory and punitive damages for administering Narcan against his will on October 27, 2020, in violation of the Fourteenth Amendment [.]" ECF 9 at 6. Nurse Boggs and Sergeant Bass each filed a motion for summary judgment. ECF 67, 72. Mr. McFall filed a joint response, and the defendants each filed a reply. ECF 82, 84, 88. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278,

282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

Near midnight on October 27, 2020, a correctional officer observed Mr. McFall shaking and stumbling into a door as Mr. McFall was preparing to start a shift working in the kitchen. ECF 67-2 at 3; ECF 67-1 at 17-19. The officer suspected he was intoxicated. ECF 67-2 at 3. The officer called for assistance, and Sergeant Bass along with another officer escorted Mr. McFall to medical. *Id.* at 2. Mr. McFall explains that he was extremely fatigued and sleep deprived because he had been working long hours in the kitchen, sometimes more than 18 hours at a time, and getting only a few hours of sleep a night. ECF 67-1 at 17-18. He told the officers this, explained that all his work scrubbing pots and using his hands in the kitchen injured him, and he showed them that his hands had turned blue. *Id.* at 10, 16-17, 21. He denied being intoxicated. *Id.* at 19-21. He believes the officers assumed he was high because of how tired he was. *Id.* at 21.

According to the medical records prepared by Nurse Boggs, Mr. McFall arrived between two officers, "head hanging and lethargic, [occasionally] will help by taking a few steps on own." ECF 67-3 at 3. Upon his arrival, Nurse Boggs' notes reflect that he was dozing off. ECF 67-3 at 3. He would awaken to a loud voice and strong touch, then doze off again. *Id.* She noted his pupils were dilated, his fingertips were burned brown, he had

2

burn marks on his clothing, and he smelled of synthetic marijuana. *Id.* She administered two doses of Narcan, one in each nostril. *Id.* She notes that he became belligerent when she was giving the Narcan and he started to fight. *Id.* Afterwards, she said he was awake and talking, but Mr. McFall claims the Narcan made him unconscious. *Id.*; ECF 83 at ¶ 6.

Indiana State Prison's directive regarding the administration of Narcan states that "[o]pioid intoxication results in unresponsiveness and respiratory depression, and must be treated as a life-threatening emergency by all Health Services and Correctional staff members." ECF 72-1 at 1. It lists several signs of opioid intoxication, including unresponsiveness, pupillary constriction, decreased muscle tone/limp body, slurred or unintelligible speech, and peripheral or central cyanosis (blue discoloration of lips, extremities, etc.). *Id.* The directive instructs staff to treat opioid intoxication as a life-threatening emergency, and notes that "if doubt exists regarding the offender's level of consciousness or source of intoxication, Narcan should still be administered, as it has no significant adverse effects." *Id.* at 1-2.

Inmates possess a Fourteenth Amendment due process liberty interest in "refusing forced medical treatment while incarcerated." *Knight v. Grossman*, 942 F.3d 336, 342 (7th Cir. 2019). To establish such a claim, the prisoner must demonstrate that the defendant "acted with deliberate indifference to his right to refuse medical treatment." *Id.* at 343. "Neither negligence nor gross negligence is enough to support a substantive due process claim, which must be so egregious as to 'shock the conscience.'" *Id.* (citation omitted). Moreover, a prisoner's right to refuse medical treatment can be overridden by "a prison regulation that is reasonably related to legitimate penological interests." *Id.*; *see also*

3

*Russell v. Richards*, 384 F.3d 444, 447-50 (7th Cir. 2004) (concluding inmate's liberty interest in refusing unwanted medical treatment of delousing shampoo was overridden by jail policy designed to address legitimate interest in avoiding outbreaks of lice). "[I]f legitimate penological interests dictate that a particular treatment must be administered even if the prisoner would have refused it, then . . . there is no constitutional right to refuse treatment." *Knight*, 942 F.3d. at 343 (quoting *Pabon v. Wright*, 459 F.3d 241, 252 (2d Cir. 2006)).

No reasonable jury could conclude Nurse Boggs or Sgt. Bass violated Mr. McFall's Fourteenth Amendment rights by administering Narcan over his objections. It is undisputed that he showed symptoms of opioid intoxication, even if the actual cause of those symptoms is disputed.[1] The prison has a legitimate interest in reducing the number of opioid-related deaths in prison, and the prison directive to administer Narcan if there are signs of opioid intoxication even if there is doubt about the actual source of intoxication is reasonably related to that legitimate interest.

Thus, even accepting as true Mr. McFall's assertion that he had not taken any drugs on October 27, 2020, the objective signs of opioid intoxication that Nurse Boggs identified brought her actions within the prison directive. And because Sgt. Bass is not a

---

[1] The defendants note that Mr. McFall was written up for possession based on this incident. ECF 67-2 at 1. He was found guilty and lost 30 days of commissary privileges. *Id.* Defendants argue that *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), and *Edwards v. Balisok*, 520 U.S. 641, 643 (1997), mean that Mr. McFall cannot challenge the finding that he possessed intoxicants. ECF 69 at 2-3; ECF 73 at 8-9. However, as noted in the screening order, *Heck* and *Edwards* apply only if an inmate lost good time credits or was demoted in credit class as a result of the disciplinary hearing. *See Alexander v. Rasmussen*, 725 F. App'x 418, 420 (7th Cir. 2018). Here, the length of Mr. McFall's sentence did not change as a result of the hearing. *Heck* and *Edwards* are inapplicable.

medical professional, he is entitled to rely on the judgment of medical staff that Narcan was appropriate. *See Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) ("If a prisoner is under the care of medical experts a non-medical prison official will generally be justified in believing that the prisoner is in capable hands") (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004)). Mr. McFall argues that Nurse Boggs administered the Narcan only after Sgt. Bass instructed her to do so and that Sgt. Bass should also be held liable for injuring his neck while holding him still. ECF 82 at 1-2, 4. But Sgt. Bass' independent determination that Mr. McFall needed Narcan does not dispute that Nurse Boggs also determined in her medical judgment that Mr. McFall showed objective signs of opioid intoxication. And the court previously denied Mr. McFall leave to proceed against Sgt. Bass on an excessive force claim because there were no allegations to suggest that Sgt. Bass used more force than was necessary to hold him still while Nurse Boggs administered the Narcan. *See* ECF 9 at 3.

Mr. McFall further argues that Nurse Boggs should not have administered Narcan because it should not be used on a person, like him, who has diabetes or ADHD. ECF 82 at 3. He provides no evidence to support this contention, though, so this unsupported statement does not dispute defendants' evidence that Narcan has no significant side adverse effects. ECF 72-1 at 2. Finally, Mr. McFall argues that because he did not receive a drug test to confirm whether he had drugs in his system, defendants cannot prove that he was intoxicated. ECF 82 at 4. This argument, though, misconstrues the nature of the court's inquiry. The issue is not whether Mr. McFall was *actually* on drugs. Rather, the issue is whether Nurse Boggs applied a reasonable policy in furtherance of a legitimate

5

penological interest. And, as discussed above, Mr. McFall presented objective symptoms of opioid intoxication that brought him within the directive's ambit. Accordingly, even when construing the facts in the light most favorable to Mr. McFall, no reasonable jury could conclude Mr. McFall had a constitutional right to refuse the administration of Narcan on October 27, 2020.

For these reasons, the court:

(1) GRANTS defendants' summary judgment motions (ECF 67, 72); and

(2) DIRECTS the clerk to enter judgment in favor of Nurse Betty and Sgt. Bass and against Steffin T. McFall and to close this case.

SO ORDERED.

February 24, 2023                                         *s/ Damon R. Leichty*
                                                                       Judge, United States District Court